IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BRADLY EUGENE BARKER,<br><br>       Plaintiff,<br><br>vs.<br><br>ARLENE ZAHN-HOUSER; JOHN ERVIN; MICHAEL DEHNER; MARK FORTSON; REBECCA JOHNSON; HEIDI BENSON; KARI SMITH; TERI DUNSHEE; BRADLEY MOWEN; ANN FORT; KASANDRA BROEKER; TODD HEDGES; JAN KEMP; ROBIN SOUTH; SHENNA SOVERN-BLOM; BARBARA LUCKENBILL; AND TRACIE GLASGOW,<br>       Defendants. | **4:23-cv-00247-SHL-HCA**<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION.

Plaintiff Bradley Barker brings claims pursuant to 42 U.S.C. § 1983 against seventeen Defendants—the medical staff at the Mount Pleasant Correctional Facility ("MPCF"). He claims that while he was incarcerated at MPCF, the staff were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. (ECF[1] 24.) Defendants move for summary judgment. (ECF 34.) Barker resists. (ECF 41.) For the reasons outlined below, Defendants' Motion for Summary Judgment is GRANTED.

## II.   BACKGROUND.

*A.   Summary of the Parties.*

Barker was a prisoner in the custody of the Iowa Department of Corrections ("IDOC") between April 2021 and August 2024 and, as relevant here, spent time at both the Iowa Medical and Classification Center ("IMCC") and MPCF. (ECF 34-1, ¶¶ 1–2.) Dr. Arlene Zahn-Houser is a physician based at IMCC who also provided treatment at MPCF during the relevant period. (Id., ¶ 3; ECF 35, p. 13.) John Ervin is a physician's assistant ("PA") who was employed at MPCF during the relevant period. (ECF 34-1, ¶ 5.) Dr. Michael Dehner is a physician who was employed

---

[1] "ECF __" refers to the Electronic Court Filing system. Page numbers reference the automatically generated page numbers in the top right corner, not the parties' page numbers.

at MPCF during the relevant period. (Id., ¶ 6.) Dr. Mark Fortson is a physician who was employed at MPCF during the relevant period. (Id., ¶ 7.) Rebecca Johnson is a registered nurse who worked in a supervisory position at MPCF during the relevant period. (Id., ¶ 8.) Heidi Benson is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 9.) Keri Smith is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 10.) Bradley Mowen is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 11.) Kasandra Broeker is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 16.) Todd Hedges is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 18.) Jan Kemp is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 20.) Robin South is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 22.) Sheena Sovern-Blom is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 23.) Barbara Luckenbill is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 25.) Tracie Glasgow is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 27.) Ann Fort is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 29.) Teri Dunshee is a registered nurse who was employed at MPCF during the relevant period. (Id., ¶ 31.)

   B.  *Factual Background.*[2]

   On February 13, 2021, Barker suffered a gunshot wound to his abdomen. (ECF 34-1, ¶ 33; ECF 41-2, ¶ 33.) The injury required major surgery and a temporary colostomy. (ECF 34-1, ¶ 33; ECF 41-2, ¶ 33.) During surgery, surgeons removed the bullet, which was lodged against his tailbone, causing a wound on his left buttock. (ECF 34-1, ¶¶ 33, 35; ECF 41-2, ¶ 33; ECF 35, p. 205.) On March 8, 2021, Barker was discharged from the University of Nebraska Medical Center ("UNMC"). (ECF 35, p. 12.) The discharge instructions included the following wound care recommendations: "Lightly pack the left gluteal wound with dry rolled gauze, two times daily. Place an ABD pad with tape over it." (Id.)

   Barker entered the custody and control of IDOC on April 15, 2021, and was initially placed at the IMCC. (ECF 34-1, ¶ 1; ECF 35, p. 3.) Barker did not report the gluteal wound to IMCC medical staff until April 26, 2021. (ECF 35, p. 13.) On April 27, 2021, Barker was examined by PA Kyle Parks due to drainage from the wound. (ECF 34-1, ¶ 35; ECF 41-2, ¶ 35.) Parks initiated

---

[2] On a motion for summary judgment, the Court resolves all disputed facts and draws all reasonable inferences in favor of the plaintiff as the non-moving party. *See Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760 (8th Cir. 1998).

a "wet-to-dry" daily dressing change and requested Barker's UNMC records. (ECF 35, pp. 13, 175.) On April 28, Dr. Zahn-Houser prescribed a 10-day prescription of clindamycin, an antibiotic, to address possible infection. (Id., p. 13.) She also ordered a culture report of Barker's wound. (Id.) On April 29, Barker reported that his wound was "really painful" and hurt to lay on. (Id., p. 148.) On May 3, 2021, Parks did a follow-up examination of Barker's wound and reviewed the culture report ordered by Zahn-Houser, which indicated the growth of a "pseudomonas" infection and clindamycin resistance. (ECF 34-1, ¶ 36; ECF 41-2, ¶ 36.) Parks changed Barker's prescription to Ciprofloxacin to address the pseudomonas infection. (ECF 34-1, ¶ 33; ECF 41-2, ¶ 33.) On June 4, 2021, Parks noted that the pseudomonas infection had resolved and renewed Barker's naproxen prescription for moderate pain related to the wound. (Id., p. 203.)

Barker was transferred from IMCC to the MPCF on June 7, 2021. (Id., ¶ 1; ECF 41-3, ¶ 3.) When he arrived, his wound was not fully healed and Barker understood that "it required regular cleaning, dressing changes (including packing at times), and monitoring for signs of infection." (ECF 41-3, ¶ 5.)  This belief was premised on Barker's earlier discharge instructions from UNMC. (ECF 35, p. 12; ECF 9-1, pp. 9–10.) On June 8, Barker was examined by PA John Ervin, who reported that Barker's rectal drainage was "normal as per his recent surgery" and his "Ostomy site unremarkable no signs of infection." (ECF 35, p. 205.) On June 11, Barker was again examined for his rectal drainage, with Ervin stating that his "suspicion of infection is low however if symptoms change we will address accordingly." (Id., p. 33.) Barker agreed to that plan. (Id.) On June 15, Barker raised concerns that his infection symptoms were worsening and was seen by Nurse Sovern-Blom, who ordered labs. (Id., pp. 35–38; ECF 34-1, ¶ 43.)

On June 16, 2021, Barker saw Nurse Tracie Glasgow, who noted that his wound was not healing properly; she noted the "left buttock incision opened up with serosanguineous drainage, tunneling to the right" and requested advice on wound care. (ECF 35, p. 38–39.) An appointment with a physician was scheduled for the next day "at a high priority." (ECF 34-1, ¶ 44; ECF 41-2, ¶ 44.) The appointment was scheduled with Dr. Michael Dehner (ECF 34-1, ¶ 44; ECF 41-2, ¶ 44), but on June 17, Nurse Heidi Benson examined Barker and found that Dehner had not seen him (ECF 34-1, ¶ 44; ECF 41-2, ¶ 44). This was apparently due to Dehner's busy schedule, as he "ha[d] meetings all day and [was] unable to see" Barker. (ECF 35, p. 41.) On Dehner's order, Benson started Barker on an antibiotic and began a regiment of daily dressing changes with "4x4 gauze and Tegaderm." (Id., pp. 41–42; ECF 34-1, ¶ 45; ECF 41-2, ¶ 45.) Barker received dressing

3

changes approximately every twenty-four hours through June 27. (ECF 35, p. 51; ECF 34-1, ¶ 47; ECF 41-2, ¶ 47.) On June 21, Nurse Kasandra Broeker noted that "wound appears to be getting noticeably deeper. Possibly needs packing." (ECF 35, p. 50.) Broeker notified the on-call medical provider who "declined to evaluate the patient at this time stating he (provider) was already aware (specifically stated having knowledge of the tunneling.)" (Id.) On June 23, Ervin noted tunneling with drainage and stated, "We will possibly call general surgery for further recommendations." (Id., p. 211.) On June 27, Barker's wound had purulent drainage, but he denied any pain or discomfort. (ECF 35, p. 51.)

On July 1, 2021, Ervin cancelled Barker's dressing changes and instructed Barker to cover his wound with adhesive bandages instead. (ECF 41-2, p. 7, ¶ 6.) On July 12, Barker was seen by Nurse Kemp for an examination, during which Zahn-Houser again placed a prescription for clindamycin for his "left gluteal abscess." (ECF 34-1, ¶ 48.) On July 19, Barker was seen by Benson, with Dehner prescribing sulfamethoxazole and scheduling daily ceftriaxone injections for three days. (Id., ¶ 49; ECF 35, pp. 65–66; ECF 41-2, p. 7, ¶ 7.) Barker continued to receive regular examinations throughout late July and August where practitioners continued to address his infection and on-going problems with his colostomy. (ECF 34-1, ¶¶ 50–63.)

On August 16, 2021, Barker was seen again due to "renewed infection and pain with sitting. (ECF 41-2, p. 7, ¶ 8.) Dr. Fortson ordered daily dressing changes with packing. (Id.) On August 31, a wound culture revealed "heavy growth of Escherichia coli." (Id., ¶ 60; ECF 35, pp. 223–24.) While Barker's medical reports indicated some improvement, his wound remained open and he reported drainage into mid-September. (ECF 34-1, ¶¶ 63–64.) Around this time, Barker's surgical providers declined to reverse his colostomy until his wound healed completely. (ECF 35, p. 86; ECF 42-1, pp. 7–8, ¶ 12.) During appointments in late September, Barker said the wound and infection were "doing a lot better," with reports reflecting little or no signs of infection. (Id., ¶¶ 65–69.) Barker alleges, however, that the "recurring infections and prolonged open wound caused unnecessary pain and interfered with his ability to sit, sleep, and move comfortably." (ECF 41-2, p. 8, ¶ 15.)

C.  *Procedural Background.*

Barker filed his original complaint *pro se* on July 19, 2023. (ECF 1.) In October 2023, the Court ordered Barker to amend his petition to remedy several defects. (ECF 5.) On January 11, 2024, Barker timely filed an amended complaint alleging deliberate indifference to serious medical

need against seventeen defendants. (ECF 9.) On initial review, the Court allowed Barker's suits against the Defendants in their personal capacity to proceed. (ECF 10.) In September 2024, the Court granted Barker's Motion to Appoint Counsel, with Christopher Kragnes appearing on his behalf. (ECF 13; ECF 14.) Barker filed an Amended Complaint on February 7, 2025, raising four Eighth Amendment theories of deliberate indifference: Medical Malpractice (Count 1), Failure to Provide Adequate Medical Care (Count 2), Interference with Prescribed Treatment (Count 3), and Failure to Protect Prisoner Safety (Count 4). (ECF 24.) Defendants answered (ECF 25) and now move for summary judgment on all counts (ECF 34). Barker resists. (ECF 41.)

## III.    LEGAL STANDARDS.

### A.   Summary Judgment Standard.

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Smith v. Ashland, Inc.*, 250 F.3d 1167, 1171 (8th Cir. 2001). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).

### B.   Section 1983 Claims and Qualified Immunity.

Barker brings claims pursuant to 42 U.S.C. § 1983, which imposes liability on any person who, acting under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. While § 1983 does not have an explicit statute of limitations, the Supreme Court has held that claims are subject to the relevant state's personal injury statute of limitations. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985) (citing *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985)). "In Iowa, this means that all such actions will be governed by a two-year statute of limitations, Iowa Code § 614.1(2)." *Id.* Barker filed his original complaint on July 19, 2023. (ECF 1.) He filed an Amended Complaint on January 11, 2024, and a Second Amended Complaint on February 7, 2025. (ECF 9; ECF 24.) Because the claims in the subsequent complaints "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," the Court finds that they relate back to the

original complaint and will use July 19, 2023, to determine the timeliness of the claim. Fed. R. Civ. P. 15(c)(1); *Bruce v. Polk Cnty. Att'y's Off.*, No. 4:18-cv-00040, 2018 WL 10075604, at *10–11 (S.D. Iowa Sept. 21, 2018). Therefore, any § 1983 claims arising more than two years prior to July 18, 2023, are barred by the statute of limitations.

Government officials are protected against § 1983 claims by the doctrine of qualified immunity, which frees them from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified Immunity is an immunity from suit rather than merely a defense to liability." *Jones v. McNeese*, 746 F.3d 887, 894 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Solomon v. Petray*, 699 F.3d 1034, 1038 (8th Cir. 2012)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Qualified immunity is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings." *Solomon*, 699 F.3d at 1038.

*C. Deliberate Indifference to Serious Medical Need.*

While in state custody, a prisoner is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). To prove his deliberate indifference claim, Barker must show: "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Est. of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Barker has "no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016) (quoting *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007)). "Where a claim is based on delay of care, the objective seriousness is measured by the effect of the delay, which is proven with 'verifying medical evidence that the prison officials ignored an acute or escalating situation

6

or that these delays adversely affected his prognosis.'" *Dantzler v. Baldwin*, 721 F. Supp. 3d 768, 781–82 (S.D. Iowa 2023), *aff'd*, 133 F.4th 833 (8th Cir. 2025) (quoting *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

"A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). "Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact." *Hancock v. Arnott*, 39 F.4th 482, 486 (8th Cir. 2022) (quoting *Schuab*, 638 F.3d at 915).

## IV.   LEGAL ANALYSIS.

Barker brings § 1983 claims against seventeen Defendants, all of which are premised in some sense or another on Barker's Eighth Amendment right against deliberate indifference to serious medical need. To the extent Barker is suggesting that his failure to protect claim (Count IV) requires a different analytical framework, the Court disagrees. Count IV simply uses alternative terminology to allege what still amounts to a claim for deliberate indifference to serious medical needs. The Court therefore will evaluate Count IV under the same objective/subjective framework as the other three Counts. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that Eighth Amendment violation involving future medical harm "will require him to prove both the subjective and objective elements"); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To prove his deliberate indifference claims, Barker must show: "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Johnson*, 929 F.3d at 575. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Crandell*, 56 F.3d at 37. Barker has "no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Saylor*, 812 F.3d at 646 (quoting *Meuir*, 487 F.3d at 1118). Defendants concede, correctly, that Barker's wound and attendant infection are serious medical needs. (ECF 37, p. 9.) Consequently, the Court needs only address the subjective element as to

each of the seventeen Defendants, keeping in mind that the Court must evaluate the claims on a Defendant-by-Defendant basis. *See Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013).

### A. Defendants Fort and Dunshee.

Ann Fort and Teri Dunshee are registered nurses who were employed at MPCF. Barker has presented no evidence that Nurses Fort or Dunshee were involved in his wound care. (ECF 41-2, p. 2, ¶ 30.) Their involvement is speculative at most. (Id., pp. 2–3, ¶¶ 30, 32; ECF 35, p. 17.) No reasonable jury could find that either of these defendants knew about and yet were deliberately indifferent to Barker's medical needs. The Motion for Summary Judgment is therefore GRANTED as to Fort and Dunshee.

### B. Defendant Zahn-Houser.

Dr. Zahn-Houser is a physician based at IMCC who was involved in Defendant's care both at IMCC and at MPCF. (Id., ¶ 3; ECF 35, p. 13.) She made orders related to Barker's care on several occasions between April 28, 2021, and July 16, 2021. (ECF 35, pp. 13–14.) She diagnosed his initial infection in April and prescribed him antibiotics on several occasions. (Id.)

Barker's claim against Zahn-Houser rests primarily on her choice to prescribe clindamycin, which Barker suggests had been ineffective against his earlier pseudomonas infection. (ECF 9-1, pp. 1–2.) Zahn-Houser initially prescribed clindamycin while Barker was at IMCC, with Kyle Parks later adjusting the prescription to ciprofloxacin in May 2021. (ECF 35, p. 13.) Zahn-Houser then prescribed clindamycin on July 12 when Barker showed signs of a renewed infection. (Id., p. 14.) When he failed to improve, Barker was prescribed ceftriaxone and sulfamethoxazole/TMP. (Id.) In essence, Barker claims that Zahn-Houser should have known clindamycin was ineffective based on earlier resistance studies, and thus that her choice to prescribe it anyway constituted deliberate indifference to his medical needs. Barker's claim fails because the record shows that Zahn-Houser provided prompt care; at most, she simply was negligent. *See, e.g.*, *Dulany v. Carnahan*, 132 F.3d 1234, 1240–45 (8th Cir. 1997) (affirming summary judgement where the care was not "[g]rossly incompetent or inadequate . . . so inappropriate as to evidence intentional maltreatment or refusal to provide essential care"). Moreover, Barker does not present any evidence that Zahn-Houser's decision to prescribe clindamycin adversely affected his prognosis. *Dantzler*, 721 F. Supp. 3d at 781–82. To the contrary, when Dehner prescribed a stronger course of antibiotics a week later, it still failed to resolve Barker's infection. In these circumstances, no reasonable juror could conclude that Zahn-Houser's choice to prescribe clindamycin constituted

deliberate indifference to Barker's needs. Finally, and in any event, Barker has largely failed to present evidence that Zahn-Houser provided care after July 19, 2021, nor has he established facts that might extend the statute of limitations. Any claim against Zahn-Houser is therefore also untimely. For these reasons, the Motion for Summary Judgment is GRANTED as to Zahn-Houser.

### C. Defendant Ervin.

John Ervin is a Physician's Assistant at MPCF who managed Barker's wound care in June and early July 2021. (ECF 34-1, ¶ 5; ECF 35, p. 14.) During this time, Ervin provided "frequent evaluation[s]" including dressing changes, cleanings, and testing for infection. (ECF 35, pp. 205–17.) Ervin was aware of the seriousness of Barker's condition given his access to Barker's medical records and his own examinations, including his note that he would "possibly call general surgery for further recommendations." (Id.) The record shows, however, that Ervin provided meaningful care.

The crux of Barker's claim against Ervin relates to his decision on July 1, 2021, to cancel dressing changes and begin using band-aids to cover Barker's wound. (Id., p. 53.) Ervin made this decision based on an evaluation by Sovern-Blom that the wound was "almost closed" with "no active" drainage. (Id.) Barker argues that this decision constitutes deliberate indifference because Ervin was aware that the wound was "deeper and tunneling, precisely the circumstance where packing and careful dressing changes are medically indicated." (ECF 41-1, p. 12; ECF 35, p. 211.) For their part, Defendants submit an affidavit from Dr. Michael D. Riley which characterizes this decision as "clinically appropriate, consistent with DOC policy, and based on the wound's healing progression." (ECF 35, p. 22.)

Barker does not provide any medical evidence that the decision to switch to adhesive bandages contributed to his worsening infection or that this decision was grossly below the standard of care. As the Eighth Circuit has noted:

> [I]nfected wounds are treated with a variety of medications and procedures. Specially trained providers may make different decisions on treatment and patients may have varying outcomes. The sophisticated medical question here is not within the common understanding of the jury or the court—and it is not "so obvious that a layperson would easily recognize" whether the medical provider's alleged actions or inactions were grossly incompetent or inadequate.

*Redmond*, 999 F.3d at 1121 (quoting *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008)). Barker may disagree with his course of treatment, but this is insufficient to establish an

Eighth Amendment violation. *Saylor*, 812 F.3d at 646; *see also Redmond*, 999 F.3d at 1121 ("[Plaintiff's] unsupported medical conclusions cannot create a question of fact about whether the defendants' medical decisions were reasonable, negligent, grossly negligent, or so ineffective as to be criminally reckless, rising to the level of deliberate indifference. Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to his serious medical need.").

Nor did Ervin's treatment amount to "intentionally interfering with the treatment" prescribed by Barker's UNMC surgeon. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Barker argues that the transition to adhesive bandages "ignored his surgeon's post operative orders." (ECF 37, p. 2.) This argument rests on the instructions he received upon his discharge from UNMC in March 2021 to "lightly pack the left gluteal wound with dry rolled gauze, two times daily." (ECF 35, p. 12.) Deliberate indifference may be evidenced by a practitioner's "decision to take an easier and less efficacious course of treatment." *See Smith v. Jenkins*, 919 F.2d 90, 93 (1990). Here, however, the record shows that the instructions are "advisory and not mandatory for [IDOC] providers" and "are subject to the clinical judgment of [IDOC] staff." (Id., pp. 12–13.) To that end, it is important to recognize that more than three months passed between the issuance of the instructions and Ervin's decision to use different dressing for the wounds. No reasonable juror could conclude that Ervin's conduct amounts to deliberate indifference. *See, e.g.*, *Martinez v. Mancusi*, 443 F.2d 921, 924–25 (1970); *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981); (ECF 35, p. 12–13 (describing the advisory nature of outside treatment orders on IDOC providers).)

Barker's claims against Ervin also are time-barred because the decision to change dressing occurred prior to July 19, 2021. While there is evidence that Ervin continued to treat Barker during the two-year window starting on July 19, 2021 (ECF 9-1, pp. 149–51), there is no evidence that this care was marred by deliberate indifference. For these reasons, the Motion for Summary Judgment is GRANTED as to Ervin.

### D. Defendant Dehner.

Dr. Michael Dehner is a physician who was employed at MPCF and completed telephone orders during several of Barker's nursing encounters in June and July 2021. Barker's primary complaint against Dehner is that he did not see Barker following "high priority" designation on June 17, 2021. (ECF 34-1, ¶ 44; ECF 41-2, ¶ 44; ECF 35, p. 41.) Barker has not, however, presented any evidence to establish that Dehner's refusal to see him on June 17 played any role in

worsening his condition. *See Redmond*, 999 F.3d at 1120–21 ("A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis."). Instead, the evidence shows that Barker's situation *improved* in the weeks after Dehner's delay. (ECF 35, p. 53.) And while his condition regressed in later months, there is no evidence connecting this regression to any of Dehner's acts or omissions.

Barker also faults Dehner for his decision on June 17, 2021, to order daily dressing changes with gauze coverings rather than with packing as was recommended by the UNMC post-operative orders. (ECF 35, p. 40.) Like Ervin's decision to change to adhesive bandages, Barker's decision was not a "intentional[] interfere[nce] with the treatment" prescribed by Barker's UNMC surgeon. *Estelle*, 429 U.S. at 105. Instead, it was well within Dehner's discretion to select a course of treatment different three months after the original, non-binding recommendations. *See, e.g.*, *Martinez*, 443 F.2d at 924–25; *Randall*, 642 F.2d at 308.

Finally, and in any event, although Dehner provided care during the two years immediately preceding this lawsuit (ECF 41-3, ¶ 14), most of the specific allegations against him involved conduct from before July 19, 2021. Thus, Barker's claims against Dehner are barred by the statute of limitations. For these reasons, the Motion for Summary Judgment is GRANTED as to Dehner.

### E. Defendant Fortson.

Dr. Mark Fortson is a physician who was employed at MPCF and treated the recurrence of Barker's infection in August 2021. In response to Barker's request for care on August 14, 2021, Fortson promptly ordered antibiotics, daily wound care (including packing), and lab testing of Barker's wound. (ECF 35, p. 76; ECF 41-3, ¶ 21.) Barker does not allege or present evidence that Fortson delayed, interfered with, or was otherwise indifferent to his care. Instead, it appears that Fortson ordered precisely the type of wound care that Barker claims was required. (ECF 41-3, ¶ 5.) In these circumstances, no reasonable jury could find that Fortson was deliberately indifferent to Barker's medical needs. The Motion for Summary Judgment is therefore GRANTED as to Fortson.

### F. Defendant Johnson.

Rebecca Johnson is a registered nurse and the Director of Nursing at MPCF who worked as a nursing supervisor at MPCF during Barker's care. "[I]t is undisputed that supervisors are not liable for Eighth Amendment claims brought under section 1983 on a respondeat superior theory." *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) (quotation omitted) (cleaned up). "For

supervisory liability, the supervisor must be personally involved in violating a federally protected right, or the supervisor's 'corrective inaction' must constitute deliberate indifference to the violation." *Partridge v. City of Benton*, 157 F.4th 970, 973 (8th Cir. 2025) (quotation omitted). Johnson did not provide any direct care to Barker and thus could only be liable if her "corrective inaction" amounted to deliberate indifference. *Id.* Which is to say, "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [they] might see." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (quotation omitted).

The evidence does not show that Johnson's corrective actions represent deliberate indifference. Following "multiple complaints concerning medical," Johnson met with Barker on March 21, 2022, to review his concerns. (ECF 35, p. 106.) While Barker was "not happy with any question answered," (id.) his wound had already healed by that point. For this reason, and because there is no evidence that Johnson was involved in any other direct way, no reasonable juror could conclude that Johnson was deliberately indifferent. The Motion for Summary Judgment is therefore GRANTED as to Johnson.

### G. *Defendant Benson.*

Heidi Benson is a registered nurse who had several interactions with Barker between June 7, 2021, and August 19, 2021. (ECF 35.) She provided Barker with colostomy supplies at his initial intake at MPCF, then saw him on June 17, 18, 19, and 23 to update his medication, facilitate his labs, and recommend that he be seen by a provider. (Id., pp. 31, 41–43, 47–48, 210, 212.) On July 16, Benson again examined Barker regarding colostomy supplies. (Id., p. 62.) On July 19, Benson examined the wound and noted:

> Patient has an incision scar on his left buttock that has a pea-sized opening near the medial side of the wound near the crease of the buttock. Wound was covered with gauze and Tegaderm. dressing had yellow drainage on it. patient is currently on clindamycin and it ends today. Left buttock is tender to palpation on the medial side and slightly swollen. Lymph node in left groin is always enlarged, patient has had multiple recurrent infection in this area, will consult on call MD.

(Id., p. 65.) On Dehner's orders, Benson provided Barker with a new prescription for Ceftriaxone. (Id., p. 66.) Benson also noted subsequent orders regarding Barker's pending labs, as well as orders from Dr. O'Brien regarding daily dressing changes, with packing. (Id., pp. 212, 219, 221.) Though not documented in the medical records, Barker alleges that he met with Benson on July 12 and August 12, when she "completely dismissed his medical concerns" related to his infection. (ECF

9-1, pp. 2, 6.) It also appears that Benson was intermittently responsible for responding to Barker's kiosk messages. (Id., p. 9; ECF 35, p. 16.)

Barker has failed to present any meaningful evidence that Benson's dismissal of his concerns on July 12 and August 12 somehow led to a deterioration in his condition. Without any such evidence, he does not have a viable claim for deliberate indifference. *See Redmond*, 999 F.3d at 1120–21. Barker also does not have a viable claim against Benson in connection with her role in implementing Dehner's dressing plan that did not involve packing. As with other Defendants, Benson was not required to in July and later months to strictly follow the post-operative plan UNMC from several months earlier. Instead, Benson and other medical professionals were permitted to adjust the plan according to their own medical judgment. *Saylor*, 812 F.3d at 646. Finally, Barker does not have a timely claim as to Benson's actions from before July 19, 2021. The Motion for Summary Judgment is GRANTED as to Benson.

### H. Defendant Smith.

Kari Smith is a registered nurse at MPCF who encountered Barker several times between June 11, 2021, and August 16, 2021. (ECF 35, p. 16.) On June 11, she assessed Barker's colostomy and wound. (Id.) On June 19, she changed the dressing in a way that Barker alleges was "inadequate" because it was different than the post-operative recommendations. (Id.; ECF 9-1, p. 7.) On August 16, Smith obtained a wound culture, administered antibiotics, and applied dressings per Fortson's orders. (ECF 35, p. 16.) She also changed Barker's dressings on August 19, 21, and 30. (ECF 9-1, pp. 25–26.)

Barker's claims against Smith fail for the same reasons they fail against several other Defendants: (i) the mere fact that medical professionals eventually began to dress the wound differently than was recommended in the post-operative instructions does not mean those professionals were deliberately indifferent to his medical needs; and (ii) claims arising out of conduct predating July 19, 2021, are untimely. The Motion for Summary Judgment is GRANTED as to Smith.

### I. Defendant Mowen.

Bradley Mowen is a registered nurse who was employed at MPCF and performed dressing changes on June 18, 20, 22, 24, and 25, 2021 pursuant to Dehner's orders. (ECF 35, p. 17; ECF 9-1, p. 26.) Mowen also answered kiosk messages from Barker on July 19 (ECF 9-1, p. 3) and saw Barker for gastrointestinal distress related to his colostomy on August 28 (ECF 35, pp. 17, 81).

13

The record does not show that Mowen delayed, interfered with, or was otherwise deliberately indifferent to Barker's needs. At most, Barker's claims against Mowen relate to the dressing changes he performed in June 2021. Barker's claims against Mowen fail for the same two reasons they fail as against the other nurses who performed dressing changes pursuant to Dehner's orders in June 2021. The Motion for Summary Judgment is GRANTED as to Mowen.

*J.   Defendant Broeker.*

Kasandra Broeker is a registered nurse at MPCF who encountered Barker several times between June 23, 2021, and September 15, 2021, to treat his wound and address other concerns. (ECF 35, p. 18.) This included, among other things, performing dressing changes on June 23 and September 9. (Broeker's note say the "patient refused to show" for his September 9 dressing change (ECF 9-1, p. 23), but the Court accepts Barker's contention that he only left after a disagreement on the proper wound care (ECF 41-3, ¶ 27).) In addition, Barker alleges that Broeker "completely dismissed" his concerns about an infection on July 12 and August 12. (ECF 9-1, pp. 2, 6.) Broeker also treated Barker for an unrelated injury on August 2 and was involved in September in carrying out the silver nitrate treatment ordered by Dr. Todd Treimer, which ultimately resolved Barker's wound. (ECF 35, p. 18.)

No reasonable juror could conclude that Broeker showed deliberate indifference to Barker's serious medical needs. Like other Defendants, Broeker's involvement in the dressing change in June cannot support a deliberate indifference claim because of the statute of limitations and the fact that medical professionals have no duty to follow advisory post-operative orders from more than three months earlier when physicians later recommend changes based on their own independent medical judgment. As to the alleged "complete dismissal" of Barker's concerns in July and August, there is no meaningful evidence that the delay adversely impacted his prognosis. *Dantzler*, 721 F. Supp. 3d at 781–82 ("Where a claim is based on delay of care, the objective seriousness is measured by the effect of the delay, which is proven with 'verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis.'"). Finally, any disagreement between Broeker and Barker as to the "proper" course of care on September 9 does not amount to deliberate indifference. (ECF 9-1, p. 23; ECF 41-3, ¶ 27.) Barker had no right to a specific care plan. *Saylor*, 812 F.3d at 646. The Motion for Summary Judgment is GRANTED as to Broeker.

### K. Defendant Hedges.

Todd Hedges is a registered nurse at MPCF who treated Barker's wound in August and September 2021. (ECF 35, p. 18.) Hedges was present for Smith's examination of Barker on August 16. (Id., p. 75.) He performed dressing changes on August 31 and September 4. (ECF 9-1, pp. 23–24.) Finally, he assessed Barker's wound on September 27 and noted the wound was "healing nicely." (ECF 35, p. 93.) The record does not contain any evidence that Hedges delayed, interfered with, or was otherwise deliberately indifferent to Barker's medical needs. The Motion for Summary Judgment is therefore GRANTED as to Hedges.

### L. Defendant Kemp.

Jan Kemp is a registered nurse at MPCF who participated in Barker's wound care between June 17 and September 12, 2021. (ECF 35, pp. 18–19.) Specifically, Kemp changed Barker's dressing on June 17, September 17, and September 25 in accordance with the orders from the IDOC physicians. (Id.) According to Defendants, Barker refused to have the dressing changed on September 7, 8, and 12, 2021; however, the Court accepts Barker's contention that this was based on a disagreement on the proper course of care rather than an outright refusal to receive care. (Id.; ECF 41-3, ¶ 27.) In addition, on July 12, Kemp examined Barker for his infection and facilitated Zahn-Houser's antibiotic order. (ECF 35, p. 19.)

Barker does not have a viable deliberate indifference claim against Kemp. As noted above, Zahn-Houser is guilty of negligence, at most, in connection with her decision to prescribe clindamycin on July 12 despite some evidence of Barker having a resistance to that medication. It follows that Kemp was not deliberately indifferent in her more limited role in administering that prescription. Kemp also was not deliberately indifferent for her role in Barker's dressing changes. Like other Defendants, Kemp was not required to follow the UNMC post-op plan for impact dressings many months later, nor does Barker have timely claims for conduct predating July 19, 2021, anyway. Finally, any claims arising from the dressing changes on September 7, 8, and 12 stem from a disagreement about the course of treatment, not deliberate indifference to Barker's needs in an Eighth Amendment sense. *Saylor*, 812 F.3d at 646. The Motion for Summary Judgment is therefore GRANTED as to Kemp.

### M. Defendant South.

Robin South is a registered nurse who was employed at MPCF and participated in Barker's care between June and September 2021. She performed dressing changes on June 30, August 16,

27, 28, and September 3, 6, 2021 and documented Barker's improving condition in late August and early September. (ECF 35, p. 19.) South also issued a prescription for ibuprofen on August 16. (Id.) On at least one occasion, records suggest that Barker "refused" a dressing change; however, he attests, and the Court accepts, that "[i]f any medical record notes a 'refusal,' it does not reflect that I was unwilling to be treated. I wanted proper wound care and timely provider evaluation." (ECF 41-3, ¶ 27.)

Barker presents no evidence that South delayed, interfered with, or was otherwise deliberately indifferent to his medical needs. At most, Barker alludes to a disagreement he had with South regarding his dressing change on August 28, 2021. Barker's belief that a different care plan would be "proper" is not sufficient to constitute deliberate indifference. *Saylor*, 812 F.3d at 646. The Motion for Summary Judgment is therefore GRANTED as to South.

### N.  Defendant Sovern-Blom.

Shenna Sovern-Blom is a registered nurse who was employed at MPCF and participated in Barker's care between June 15 and August 22. (ECF 35, p. 19.) She examined Barker's wound on June 15, noted its worsening condition, and ordered labs. (Id.) Sovern-Blom conducted the wound check on July 1, which noted the wound was almost closed with minimal drainage, and followed Ervin's order to transition to adhesive bandages. (Id., pp. 19, 53–54.) Finally, she performed dressing changes on Barker in late August. (Id., p. 19.)

At most, Barker's claim against Sovern-Blom hinges on her role in changing the dressing to adhesive bandages on July 1. (ECF 9-1, p. 18.) As with many other Defendants, Barker's claims in this regard against Sovern-Blom fail due to the statute of limitations and the fact that medical providers were not required to follow the UNMC orders indefinitely. As Barker does not present any other evidence that Sovern-Blom delayed, interfered with, or demonstrated deliberate indifference towards his medical needs, he has no viable claim against her. The Motion for Summary Judgment is therefore GRANTED as to Sovern-Blom.

### O.  Defendant Luckenbill.

Barbara Luckenbill is a registered nurse who was employed at MPCF and participated in Barker's wound care between June 26 and September 16, 2021. (ECF 35, p. 20.) She performed dressing changes on August 17, 20, 22, 26 and September 1, 2, and 16. (Id., p. 20.) Respondents present evidence that Barker refused changes on June 26 and 27, but the Court accepts Barker's contention that this actually represented a disagreement on the proper care plan. (Id.; ECF 41-3,

16

¶ 27.) On September 11, Luckenbill examined Barker related to gastrointestinal distress and anxiety. (ECF 35, p. 20.)

Barker presents no evidence that Luckenbill delayed, interfered with, or was otherwise deliberately indifferent to his medical needs. At most, Barker alludes to a disagreement he had with Luckenbill regarding his dressing change in June 2021. Barker's belief that a different care plan would be "proper" is not sufficient to constitute deliberate indifference. *Saylor*, 812 F.3d at 646. In any event, this disagreement predates July 19, 2021, and would be time-barred. The Motion for Summary Judgment is therefore GRANTED as to Luckenbill.

    *P. Defendant Glasgow.*

Tracie Glasgow is a registered nurse who was employed at MPCF and participated in Barker's wound care between June and August 2021. (ECF 35, p. 20.) She examined Barker's wound after it reopened on June 16, placing a gauze dressing on it and scheduling him for an appointment the following day with a provider. (ECF 35, p. 38.) On June 29, Glasgow helped schedule a nurse check on Barker's wound. (Id., p. 217.) Glasgow performed dressing changes on June 18, June 28, and August 23 to 25, 2021, per physician's orders. (ECF 35, p. 20; ECF 9-1, pp. 25–27.) On July 12, she prescribed Barker ibuprofen. (ECF 35, p. 61.)

Barker's claim against Glasgow seems to rest on the fact that she took Dehner's order to cover the wound rather than pack it on June 16. (Id., pp. 38–39, 40; ECF 9-1, pp. 18–19.) This claim fails due to the statute of limitations and the fact that medical providers were not required to follow the UNMC orders indefinitely. *See Saylor*, 812 F.3d at 646. The Motion for Summary Judgment is therefore GRANTED as to Glasgow.

## V.    CONCLUSION.

Defendants' Motion for Summary Judgment is GRANTED in its entirety. (ECF 34.) The Clerk of Court is directed to enter Judgment for Defendants and close the case.

    **IT IS SO ORDERED.**

    Dated: April 20, 2026.

                                          Stephen H. Locher
                                          UNITED STATES DISTRICT JUDGE